The Honorable Paul R. Beckert, individually and on behalf of the Judges of the Court of Common Pleas of Bucks County, Petitioners *v.* American Federation of State, County and Municipal Employees, District Council 88, AFL-CIO et al., Respondents.

Argued June 4, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge MENCER did not participate.

*James M. Penny, Jr.* with him *Anthony F. Visco, Jr.,* and *Doreen S. Davis-Rosenfeld, Obermayer, Rebmann, Maxwell & Hippel,* for petitioners.

*Jonathan Walters, Kirschner, Walters & Willig,* for respondent, American Federation of State, County and Municipal Employees.

*Theodore M. Lieverman,* Assistant Attorney General, with him *James L. Crawford* and *Mary Teresa Gavigan,* for respondent, Pennsylvania Labor Relations Board.

OPINION BY JUDGE WILLIAMS, JR., February 11, 1981:

Directed to this Court's original jurisdiction under Section 761(a)(1) of the Judicial Code,[1] the Honorable Paul R. Beckert (petitioner) has filed an action in equity against District Council 88 of the American Federation of State, County and Municipal Employees (union) and the Pennsylvania Labor Relations Board (Board). Suing on behalf of himself and the other judges of the Court of Common Pleas of Bucks County, the petitioner seeks to enjoin the Board from assuming jurisdiction over an unfair labor practice charge made by the union against the judges and the commissioners of Bucks County.[2] Instantly before us is the petitioner's motion for summary relief, as well as the respondents' preliminary objections urging us to dismiss the action.

In March 1977 the union, acting as bargaining representative for the non-professional court employees, including the clerks of the district justices, entered into an agreement or "Memorandum of Understanding" with the commissioners of Bucks County and the judges of the Court of Common Pleas.

Article XVIII of the agreement sets forth a three step procedure for the resolution of grievances or disputes between the parties concerning the meaning and application of the agreement. "Step One" provides for a grievance to be first submitted to the employee's department head. If the grievance is not thereby resolved, it may be appealed to "Step Two," the Court Administrator. If the grievance is not resolved at that stage, an appeal may be taken to "Step Three," the President Judge.

---

[1] 42 Pa. C. S. §761(a)(1).

[2] The petitioner also seeks to enjoin the union from proceeding with the matter.

The terms of a "Step Three" appeal are that the President Judge, or his designees, shall render a final written decision within ten days after the next regularly scheduled Board of Judges meeting, and that grievances shall not be subject to arbitration.

Under Article XVII of the agreement no employee may be demoted, suspended, discharged or disciplined without just cause. It is also provided that an employee may appeal any such action by beginning at "Step Two" of the grievance procedure set forth in Article XVIII. Article XVII also provides that it shall not apply to the extent that it is in conflict with *constitutional provisions*, statutes, regulations or *judicial decisions regarding the operation of the judiciary*.

In August 1979 Margaret Minnichbach, a clerk of a district justice, was discharged from her employment. Pursuant to Article XVII, she appealed the discharge by commencing at "Step Two" of the grievance procedure set forth in Article XVIII. Apparently an accord was reached between the Court Administrator and the union, and as a result the employee was to be reinstated. However, the district justice appealed the matter to the President Judge pursuant to "Step Three" of the Article XVIII procedure. On October 1, 1979, two Common Pleas judges acting as designees of the President Judge upheld the discharge.

In the wake of the "Step Three" decision upholding the discharge, the union filed with the Board unfair labor practice charges against the county commissioners and the Court of Common Pleas, alleging violation of Sections 1201 (a)(1) and (5) of the Public Employe Relations Act (PERA).[3]

Specifically, the union contended that the commissioners and the judges had failed to bargain in good

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1201(a)(1), (5).

faith in that they had not honored the appeal rules set forth under Article XVIII of the agreement. In that regard, the union theorized that the Court Administrator had resolved the matter favorably to the employee at the "Step Two" level, and that under the terms of Article XVIII the employer had no right to appeal the matter further to "Step Three." What is perhaps the same point in varied form, the union also alleged that the commissioners and the judges violated PERA by not honoring the accord which the union reached with the court Administrator at "Step Two," and that under the terms of Article XVIII the employer had no legal right to contest that accord further.

On November 8, 1979, the Board acted on the union's charges by issuing a Complaint and Notice of Hearing, pursuant to Section 1302 of PERA.[4] As a consequence, the Honorable Paul R. Beckert, President Judge of the Court of Common Pleas of Bucks County, filed in the Commonwealth Court a petition for review in the nature of a complaint in equity, seeking to permanently enjoin the Board from exercising jurisdiction over the unfair labor practice charges. Contemporaneously, the petitioner requested the issuance of a preliminary injunction.

The union filed preliminary objections challenging the subject matter jurisdiction of this Court. Preliminary objections were also filed by the Board, asserting that (1) the petitioner is precluded from relief by principles of res judicata; (2) the petitioner's complaint fails to state a cause of action; (3) this Court lacks subject matter jurisdiction; and (4) necessary parties have not been joined.

The theory of the petitioner's action is that the discharge of a court employee is a matter within the

---

[4] 43 P.S. §1101.1302.

exclusive province of the courts by force of the Pennsylvania Constitution and that, therefore, the Board is without jurisdiction to entertain the matter, even under PERA. Emphasizing that the union's charges arise from and concern the discharge of such an employee, the petitioner asserts that to interpret PERA as giving the Board jurisdiction over those charges will result in an unconstitutional encroachment on the powers of a separate branch of government, the judiciary.

In December 1979 this Court, per Judge Craig, heard the request for a preliminary injunction, on a record of stipulated facts. On January 14, 1980, Judge Craig issued a preliminary injunction restraining the Board and the union from further proceedings until this Court decided the underlying issues on the merits. On March 7, 1980, the Court issued an order directing that the petitioner's motion for summary relief, and the respondents' preliminary objections, be heard at the same time on the merits. To that end, this Court, sitting *en banc*, heard argument in June 1980.

Following the 1976 amendment of The County Code,[5] there was significant litigation concerning the applicability of PERA to the judiciary and judicial employees. In *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), the Supreme Court of Pennsylvania held that county commissioners are the exclusive management representatives for the courts in representation proceedings and collective bargaining under PERA involving court employees paid from county funds. Although *Ellenbogen* did not address the constitutionality of applying PERA to the judiciary, the Court was of the view that the authority of the commissioners did not diminish the right of judges to hire, discharge and supervise court employees.

---

[5] Section 1 of the Act of June 29, 1976, P.L. 460, *amending* Section 1620 of the Act of August 9, 1955, P.L. 323, 16 P.S. §1620.

The Court's opinion in *Ellenbogen* pointed out that collective bargaining concerns the financial terms of employment, which do not affect the judges' authority over the essential areas of hiring, discharging and supervising court personnel. The Court further stated that "if results of bargaining pose a genuine threat to the judicial function, nothing in Act 195 [PERA] or our decision precludes the judiciary from taking steps reasonably necessary to assure the independence of the judicial branch." *Id.* at 438, 388 A.2d at 735.

Decided the same day as the *Ellenbogen* case was *Commonweatlh ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978). In *Bradley* the Supreme Court was squarely confronted with the issue of whether PERA could, consistent with the Pennsylvania Constitution, be applied to the courts and court employees. The *Bradley* case involved the court reporters in the Philadelphia court system. The Supreme Court held that the Philadelphia judges are "public employers" of the reporters, and that as "Public employees" the reporters were entitled to the rights of organizing and bargaining created by Section 401 of PERA.[6] The Court held that on the record before it, it was constitutional to apply PERA to the court reporters of Philadelphia.

The *Bradley* opinion states that the Court upheld the constitutionality of PERA in *Ellenbogen* "principally because judges retain the right to hire, discharge, and supervise court personnel."[7] *Bradley, supra,* at 445, 388 A.2d at 738. Further, in *Bradley,* the Supreme Court said:

> [S]o long as judges retain authority to select, discharge, and supervise court personnel, the independence of the judiciary remains unim-

[6] 43 P.S. §1101.401.

[7] Note 3.

paired. These crucial areas of judicial authority are not infringed by collective bargaining, which here will resolve matters involving wages and other financial terms of employment. (Emphasis added.)

*Id.* at 447, 388 A.2d 739.

The doctrine of separation of powers is embodied in Article V, Section 1, of the Pennsylvania Constitution. That doctrine recognizes that the *functions* of the several parts of government are thoroughly separated and distinctly assigned to the separate branches of it, the legislature, the executive and the judiciary, which within their respective departments are equal and coordinate. *DeChastellux v. Fairchild*, 15 Pa. 18, 20 (1850).[8]

The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974); *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949). The power to appoint necessary attendants upon the court is inherent in the court to enable it to perform properly the duties delegated to it by the Constitution; and it cannot be doubted that *judicial power includes authority to select persons whose services may be required in judicial proceedings or who may be required to act as the assistants of the judges in the performance of their judicial functions. Sweet, supra,* at 462-63, 322 A.2d at 365.

---

[8] In *DeChastellux* the Pennsylvania Supreme Court stated: "[i]t has become the duty of the court to temporize no longer, but to resist, temperately, though firmly, any invasion of its province, whether great or small." 15 Pa. at 21. This quotation was repeated in *Commonwealth v. Sutley*, 474 Pa. 256, 263, 378 A.2d 780, 783 n. 5 (1977). It was also repeated in significant part in *In Re 42 Pa. C. S. §1703*, 482 Pa. 522, 533, 394 A.2d 444, 450 (1978).

Because the power to select judicial assistants is an inherent corollary of the judicial power itself, the power to supervise or discharge such personnel must flow essentially from that same source. In sum, the selection or hiring of judicial assistants is an exercise of judicial power; and so is their discharge. If the discharge of a judicial assistant from a given position were not also an inherent judicial power, then the act of selecting that person in the first instance would alter the very nature of the power of future selection as it relates to that position.

Based on the principles we have set forth, we must conclude that the discharge of a judicial employee is a judicial power vested by our Constitution in the courts. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government. PERA grants to judicial employees the right to organize and to bargain collectively with county commissioners, or other management representatives of the courts, concerning the financial terms of employment. That much our Supreme Court has decided. However, PERA cannot constitutionally be interpreted as immunizing such employees from the inherent judicial power of discharge.[9] Given that such power is a judicial one under the Pennsylvania Constitution, it would cease to be a *judicial* power if its exercise was subject to the monitoring and review of another branch of government.

Although county commissioners may act for judges in collective bargaining proceedings over financial mat-

---

[9] That is not to say that an employee can be discharged for exercising a right conferred by statute or constitutionally protected without raising due process considerations. *See Bishop v. Wood,* 426 U.S. 341 (1976); *Board of Regents v. Roth,* 408 U.S. 564 (1972).

ters, it is difficult to imagine how such representatives could serve as proxy for a judge in an administrative hearing concerning the discharge of a court employee. Quite often, the reason for such discharge will be within the personal knowledge of a particular judge. It would be adverse to the efficient functioning of the court system if judges had to become witnesses in administrative proceedings. Neither efficiency nor constitutional values are served if a judge must look over his shoulder to an agency of some other branch if he elects to discharge an unproductive law clerk, incompetent secretary, or any other court employee under his supervision.

As a general proposition, any public employee in Pennsylvania is subject to summary dismissal unless by valid legislative action or by contract greater employment rights are created. *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960); *Pagano v. Pennsylvania State Horse Racing Commission*, 50 Pa. Commonwealth Ct. 499, 413 A.2d 44 (1980); *Tomasetti v. Bowers*, 47 Pa. Commonwealth Ct. 355, 408 A.2d 192 (1979); *Amesbury v. Luzerne County Institution District*, 27 Pa. Commonwealth Ct. 418, 366 A.2d 631 (1976). That proposition applies to public employees of the courts, except that the extent of permissible legislative action is restricted by the constitutional doctrine of separation of powers. The legislature may not consistent with that doctrine make the discharge of a judicial employee the subject of a proceeding and decision by an administrative agency of another branch of government.

It would seem that a court of common pleas could in the exercise of its constitutional power provide for a grievance or hearing procedure prior to the discharge of a judicial employee. Such a procedure could be created by the court's own initiative or be the result of an agreement with a representative of the employees.

However, discharge decisions under such a procedure would have to remain finally with the court. For some non-judicial branch of government to be given the power to review such decisions would represent an encroachment on the judiciary's control of hiring and discharging court employees. An agreement establishing grievance and hearing procedures may be the source of rights entitled to legal protection by an action in law or equity. But such an agreement cannot be deemed to transfer to some *other branch* of government a court's constitutional power over the hiring and discharge of court employees.

In the case at bar, Article XVII of an agreement between the union and the commissioners and judges sets forth provisions concerning the discharge of employees covered by the agreement. That Article provides that an employee may not be discharged without "just cause" and is entitled to pursue a certain appeal procedure in the event of discharge. However that same Article XVII contains an express caveat that the provisions of the Article shall not apply "insofar as they are in conflict with applicable *constitutional provisions*, statutes, regulations or *judicial decisions regarding the operation of the Judiciary*." (Emphasis added.)

It would seem that no such express caveat was necessary, at least so far as constitutional considerations are concerned. But, in any event, the agreement makes it clear to the parties that Article XVII cannot confer rights on an employee that offend constitutional principles. Although the agreement was executed in March 1977 and pre-dated the decisions of the Pennsylvania Supreme Court in *Ellenbogen* and *Bradley*, the principles of those cases became incorporated into Article XVII of the agreement as a restriction on its effect. Those limiting principles became incorporated not only by the express terms of the Article itself, but also

by force of being constitutional principles. In short, the agreement between the union and the other parties cannot validly give a court employee a right to have his discharge reviewed by a non-judicial branch of government; nor can the agreement have the effect of vesting such power in another branch.

The matter in controversy between the petitioner and the union, and referred to the Board, is the judicial discharge of a judicial employee. That is the reality of the matter despite efforts by the union to color it an "unfair labor practice." Therefore, for an agency of a non-judicial branch of government to exercise power over the matter would amount to an unconstitutional encroachment on a province of the judiciary.

We must reject the respondent's contention that the constitutional issue of this case must be first submitted to the Board as the exclusive tribunal of primary resort. For, it has been held that Pennsylvania courts may enjoin an administrative agency from exercising powers forbidden to it by the Constitution. *Bell Telephone Co. of Pennsylvania v. Driscoll*, 343 Pa. 109, 21 A.2d 912 (1941); *Western Pennsylvania Hospital v. Lichliter*, 340 Pa. 382, 17 A.2d 206 (1941); *Beth Jacob Schools of Philadelphia v. Pennsylvania Labor Relations Board*, 8 Pa. Commonwealth Ct. 343, 301 A.2d 715 (1973).

In view of our determination that it would be unconstitutional for the Board to exercise jurisdiction over the employee discharge underlying this litigation, it would be incongruous to conclude that the constitutional question itself should be passed on by the Board in the first instance. The power of courts to decide all constitutional questions is traditional and inherent. *Stander v. Kelley*, 433 Pa. 406, 414, 250 A.2d 474, 478 (1969). Companion to our exercise of that power in this case, and for the reasons set forth in this opin-

ion, we hold that the Board must be enjoined from exercising jurisdiction over the "unfair labor practice" charges here in issue. In the course of so holding, we overrule each of the respondents' preliminary objections.

ORDER

AND NOW, the 11th day of February, 1981, the preliminary objections of the respondents in the above matter are overruled. Further, petitioner's motion for summary relief is granted and the respondents are permanently enjoined from conducting further proceedings before the Pennsylvania Labor Relations Board in the matter designated as case no PERA-C-13299-E.

---

DISSENTING OPINION BY JUDGE CRAIG:

Where the judges of a court have chosen to exercise their judicial responsibility for hiring, supervising and firing court personnel by executing a collective bargaining agreement within the framework of the Public Employe Relations Act (PERA),[1] we cannot nullify that lawful voluntary agreement on the ground of the independence of the judiciary.

The judiciary is not independent of the law, including the PERA. The central holding of the Pennsylvania Supreme Court in *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978) was that the PERA constitutionally confers upon direct court employees the right to bargain collectively, through union representa-

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.101 *et seq.*

tion of their own choice, as to their terms and conditions of employment, with the judges, who retain their authority to select, discharge and supervise court personnel.

Certainly the courts can exercise that authority by contract, as in this case, agreeing to discharge employees only for cause, subject to grievance procedures. Judicial independence does not mean that judges are restricted only to firing employees at their pleasure, nor that judges are restricted to granting tenure and grievance rights reviewable only by themselves. If we hold that the voluntary commitment of the Bucks County Court of Common Pleas is ineffectual in any respect, we are limiting judicial discretion. Why should not the court, like other public institutions, be empowered to engage in collective bargaining within the entire framework of PERA?

If the courts can choose to bargain collectively, their collective bargaining is complete only if it has the remedies provided by the law of labor relations, including Pennsylvania Labor Relations Board review of grievance decisions. When the Supreme Court expressly confirmed that court employees enjoy the rights set forth in Section 401 of PERA, 43 P.S. §1101.401, because the judiciary is a "public employer," those employees were vested with protection against unfair labor practices by a "[p]ublic employer[s]" under Section 1201, 43 P.S. §1101.1201, including the claims of violation of Section 1201(a)(1) and (5) raised here. PERA Sections 1301-1306, 43 P.S. §§1101.1301-1306, confer and define the PLRB's exclusive power to review unfair labor practices.

Although it would be unconstitutional for the legislature to dictate that the courts must include tenure provisions in a collective bargaining agreement, it is not unconstitutional for a court to choose to do so, as the court did here. The severability clause of the

contract should not be a basis for avoiding the full statutory consequences of the agreement made and signed. In *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 26 Pa. Commonwealth Ct. 290, 364 A.2d 534 (1976), where the constitutional issue was not raised, we affirmed a PLRB decision that common pleas judges had erred in discharging a court employee. That case demonstrated that judicial collective bargaining under PERA, including PLRB review, is workable and reasonable.

Even if the judges in this case have the right to appeal the grievance decision made by their own court administrator, and also have the power to overturn their own administrator, that mingling of the role of employer and adjudicator is tolerable as a matter of due process only if there is a disinterested remedy short of appellate review, such as the administrative one provided by the PERA. Indeed, the situation of the judicial system as employer can be on a sound basis only if the judiciary is not required to be the sole arbiter of its own employees' grievances.

In *Bradley, supra*, 26 Pa. Commonwealth Ct. 290, 364 A.2d 534, we noted that the judges of the Court of Common Pleas of Philadelphia County had disqualified themselves as parties in interest.

Here, where the agreement designates the president judge of the employer court as the arbiter of the third step in the grievance procedure, to permit operation thereafter of the PERA appeal machinery, subject as always to ultimate judicial review, will provide a constitutional, equitable and workable implementation of the collective bargaining relationship, as in the two *Bradley* cases above.