650 A.2d 1146

## COUNTY OF BUTLER,

v.

### Joseph W. O'BRIEN a/k/a J. William O'Brien, Local 585, Service Employees International Union, Appellants.

Commonwealth Court of Pennsylvania.

Argued June 6, 1994.

Decided Nov. 16, 1994.

Alan C. Blanco, for appellants.

Bruno A. Muscatello, for appellees.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Joseph W. O'Brien, a/k/a J. William O'Brien (O'Brien), and Local 585, Service Employees International Union (Union), (collectively, Appellants) appeal from the July 27, 1993 order of the Court of Common Pleas of Butler County (Common Pleas) enjoining arbitration proceedings under the Collective Bargaining Agreement (Agreement) between Appellants and the County of Butler (County).

The record indicates that on or about April 12, 1982, O'Brien, a member of the Union, was appointed to a position as a caseworker/locator in Common Pleas' domestic relations division (Employer). By a memorandum from Common Pleas' president judge dated July 24, 1992, Employer terminated O'Brien's position effective August 7, 1992. Appellants allege that at the time of O'Brien's termination, he "had been a County employee for approximately 18 years," and had not

received any prior "disciplinary warning that termination was imminent."

Appellants filed a grievance complaint alleging that O'Brien's termination was without just cause and was in violation of Agreement provisions in effect from December 1, 1988 through November 30, 1992. In response, O'Brien's supervisor argued that "the right to hire, discharge, supervise Court appointed personnel is vested in the Court," and that O'Brien's discharge was effectuated as part of the Court's compliance with state and federal regulations governing necessary reorganization as mandated by a "recent DPW Compliance Audit."

In accordance with the third step of the grievance procedure, O'Brien appealed his discharge. In its response, Employer argued that "discharge of [a] judicial employee is [a] judicial power vested by [the] Pennsylvania Constitution in [the] courts, and such power may not, consistent with [the] constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government; therefore, GRIEVANCE IS DENIED."

On August 30, 1992, the Union submitted O'Brien's grievance for arbitration and, on October 20, 1992, the County filed a complaint in equity to enjoin arbitration proceedings between the County and the Union. In its complaint, the County contended that the Agreement did not give an arbitrator jurisdiction over the hiring or discharge of O'Brien who, as a judicial employee, was solely under the authority of Common Pleas' domestic relations division.

On July 7, 1993, Common Pleas heard the case and, by order dated July 27, 1993, granted the County the relief requested in its complaint and enjoined arbitration as to O'Brien's grievance. O'Brien and the Union collectively filed an appeal to this Court.

■ Our review of a trial court decision "is limited to determining whether the trial judge's findings are supported by substantial evidence, whether an error of law has been committed, or whether the trial judge abused his or her

discretion." *Northampton Area School District v. Skepton*, 138 Pa.Commonwealth Ct. 574, 576 n. 2, 588 A.2d 1020, 1022 n. 2, *petition for allowance of appeal denied*, 529 Pa. 637, 600 A.2d 956 (1991).

Appellants argue that this Court must reverse Common Pleas' order enjoining arbitration, unless it can be asserted with positive assurance that the arbitration provisions of the Agreement do not cover O'Brien's termination. *Chester Upland Education Association v. Pennsylvania Labor Relations Board*, 158 Pa.Commonwealth Ct. 134, 631 A.2d 723 (1993). Appellants further contend that the plain language of the Agreement raises questions of interpretation regarding O'Brien's entitlement to the relief he requested by way of grievance, which questions are solely for the arbitrator, and not Common Pleas, to decide. Finally, Appellants argue that by granting the County's requested stay of arbitration, Common Pleas, in essence, was interpreting the Agreement, a function properly reserved for an arbitrator.

Issues analogous to those in the present case arose in *Beckert v. American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO*, 56 Pa.Commonwealth Ct. 572, 425 A.2d 859 (1981), *affirmed*, 501 Pa. 70, 459 A.2d 756 (1983), wherein this Court stated:

It would seem that a court of common pleas *could* in the exercise of its constitutional power provide for a grievance or hearing procedure prior to the discharge of a judicial employee. Such a procedure *could* be created by the court's own initiative or be the result of an agreement with a representative of the employees. *However, discharge decisions under such a procedure would have to remain finally with the court.* For some non-judicial branch of government to be given the power to review such decisions would represent an encroachment on the judiciary's control of hiring and discharging court employees. An agreement establishing grievance and hearing procedures may be the source of rights entitled to legal protection by an action in law or equity. *But such an agreement cannot be deemed to transfer to some other branch of government a court's*

*constitutional power over the hiring and discharge of court employees.*

. . . .

... In short, the agreement between the union and the other parties cannot validly give a court employee a right to have his discharge reviewed by a non-judicial branch of government....

*Id.* at 582–84, 425 A.2d at 863–64 (emphasis added).

■ Although we recognize the applicability of the *Beckert* rationale to the question of bargaining agreements in relation to court personnel, as Common Pleas's opinion correctly notes, it is "undisputed that O'Brien was an employee of the Court of Common Pleas and that the Court of Common Pleas was *not* a party to the collective bargaining agreement." Accordingly, *the provisions of the Agreement do not control,* and we concur with Common Pleas that

[t]here is nothing in Act 195 that reduces or changes the duty and responsibility of the district as to the employment, supervision, discipline and termination of employees.... The separation of powers insures that the executive and legislative branches do not manage and control the judiciary.

Of relevance to the issue of hiring and discharging court personnel was this Court's decision in *Teamsters Local 115 v. Pennsylvania Labor Relations Board,* 152 Pa.Commonwealth Ct. 394, 619 A.2d 382 (1992), *petition for allowance of appeal denied,* 535 Pa. 671, 634 A.2d 1119 (1993), which recognized certain constitutionally protected rights of court employees to organize and bargain collectively under Act 195, but which nonetheless reaffirmed that

[t]he inherent power of the judiciary to control the hiring, firing and supervision of its employees unhindered by other branches of government is well established. As our Supreme Court has stated:

[T]he power to appoint necessary personnel is inherent in the judicial power. The authority to supervise and to discharge court-appointed employees is not only a neces-

sary corollary to this appointment power but also is essential to the maintenance of an independent judiciary. *County of Lehigh v. Pennsylvania Labor Relations Board,* 507 Pa. 270, 275, 489 A.2d 1325, 1327 (1985) (citations omitted).

*Id.* at 404, 619 A.2d at 387. *Teamsters Local* concedes that judges can, of their own volition, limit their absolute hiring and firing authority through collective bargaining. It emphasizes, however, that if such limitation "is not *voluntarily* granted, of course, that would summarily end the matter." *Id.* at 407, 619 A.2d at 389 (emphasis added).

Based on the foregoing discussion, the order of Common Pleas is affirmed.

## ORDER

AND NOW, this 16th day of November, 1994, the order of the Court of Common Pleas of Butler County in the above-captioned matter is affirmed.

NARICK, Senior Judge, dissenting.

I respectfully dissent.

I first turn to the merits of the Union's appeal before addressing whether the Court of Common Pleas of Butler County (Common Pleas) had jurisdiction to enjoin arbitration proceedings under the Collective Bargaining Agreement (Agreement) between the Union and the County of Butler (County). It is undisputed that the Agreement provided that *all* disputes between the parties be settled by arbitration; that O'Brien was a court employee who was also a part of the bargaining unit represented by the Union; that he was terminated by his Employer, the President Judge of the Court of Common Pleas (Employer); that the Employer was not a "named" party to the Agreement;[1] that O'Brien processed his termination through the grievance procedure of the Agreement between the parties and ultimately sought arbitration,

---

1. The County, acting as agent for Employer, negotiated the Agreement with the Union.

which was enjoined by Common Pleas and gives rise to the matter now before this Court.

The majority opinion affirming Common Pleas' enjoining arbitration of a dispute by the parties involving a court employee represented by the Union flies in the face of the well-established Pennsylvania law, modeled after the federal policy, that arbitration under the Agreement is the preferred manner for the resolution of labor disputes and the less judicial participation, the better. *Community College of Beaver County v. Community College of Beaver County, Society of Faculty, PSEA/NEA*, 473 Pa. 576, 590, 375 A.2d 1267 (1977), citing therein the Supreme Court's decisions known as the *Steelworkers' Trilogy*.[2] This Court noted in *East Pennsboro Area School District v. Pennsylvania Labor Relations Board*, 78 Pa.Commonwealth Ct. 301, 305, 467 A.2d 1356, 1358 (1983), at footnote 2, "while federal labor policy only favors arbitration this Commonwealth's labor policy in relation to public employees mandates it." Further, the Court stated:

> The legislature has provided through PERA [Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301] that collective bargaining between public employers and employees is a method by which labor relations are to be conducted and that arbitration is the mandatory method of resolving disputes arising from the collective bargaining process. Yet certain public employers have obstinately refused to accept this legislative mandate. Should an employer wish to exclude areas from arbitration, it should do so through the collective bargaining process rather than by asking the courts to rectify the employer's oversights and/or shortcomings in evidencing its intent through the collective bargaining agreement.

*Id.* at 313, 467 A.2d at 1361. The settlement of labor disputes through arbitration pursuant to the party's Agreement, is part

---

**2.** The *Steelworkers' Trilogy* includes: *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

and parcel of the collective bargaining process. *Lincoln University of Commonwealth System of Higher Education v. Lincoln University Chapter of American Association of University Professors,* 467 Pa. 112, 354 A.2d 576 (1976).

The function of the court is limited when the parties have agreed to submit all aggrieved questions of contract interpretation to the arbitrator. Whether the moving party is right or wrong is always a question of contract interpretation for the arbitrator. It is the arbitrator's judgment that was bargained for and agreed to. The courts, therefore, have no business weighing the merits of the grievance or deciding whether there is equity in a particular claim, or language to support the claim. Such agreements submit all grievances to arbitration and not merely those which the court may deem meritorious. It is clear from an analysis of the federal and state courts' opinions addressing the issues of arbitration, the courts are prohibited from being "Monday Morning Quarterbacks," i.e., of "second-guessing" the arbitrator's contract interpretations. It is equally clear, if the arbitrator's award is not supported factually or legally, it is then when the court, without question, has the authority to address the issues and determine whether the arbitrator's award should be affirmed or vacated. *Midland Borough School District v. Midland Education Association, PSEA,* 532 Pa. 530, 616 A.2d 633 (1992).

In this case, the parties Agreement, Section 10.1 provides that:

*All disputes* between the County and the Union ... relating to the application or interpretation of this agreement and/or any dispute concerning wages, hours and working conditions of employees covered by this Agreement shall be settled in accordance with the following procedure: (Emphasis added.)

Step 4: In the event no agreement is reached ... (in the grievance procedure) the union may ... appeal the grievance to arbitration.... The decision of the impartial arbitrator shall be final and binding. However, it is agreed that the arbitrator shall be bound by the terms of this Agreement and shall have no authority to modify its terms.

Under the Agreement, the grievance at issue clearly raises questions of the application and interpretation of the Agreement. Accordingly, the trial court erred when it enjoined arbitration of the dispute. Under Section 7304(b) of the Uniform Arbitration Act (UAA) (1980), 42 Pa.C.S. § 7304(b), a stay of arbitration may be appropriate when: "On application of a party to a court to stay an arbitration ... the court may stay an arbitration proceeding on a showing that there is *no agreement to arbitrate.*" (Emphasis added.)

Further, in considering an application for a court order staying arbitration under Section 7304(e) of the UAA, 42 Pa.C.S. § 7304(e), it requires that the court *not examine the merits of the controversy.*

> **(e) No examination of merits.**—An application for a court order to proceed with arbitration shall not be refused, *nor shall an application to stay arbitration be granted, by the court on the ground that the controversy lacks merit or bona fides or on the ground that no fault or basis for the controversy sought to be arbitrated has been shown.* (Emphasis added.)

Pennsylvania case law applying Section 7304 of the UAA powerfully confirms that a stay of arbitration should issue only when there is *positive assurance* that there is no *agreement to arbitrate.* This principle supported by a long line of authority was recently restated in the *Sanitary Sewer Authority of the Borough of Shickshinny v. Dial Associates Construction Group, Inc.,* 367 Pa.Super. 207, 532 A.2d 862 (1987). In that case the court confirmed: "When one party to an agreement to arbitrate seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the questions of *whether the agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision." Id.* at 210, 532 A.2d at 863 (citations omitted).

As noted above, it is clear that the refusal of the County's application for a stay would not preclude the County from challenging an *arbitration award* on the basis that an arbitrator may have exceeded his authority or might have rendered

an illegal award. It is clear that the court's role is merely that of a reviewing body in making certain that the factual and legal findings of an arbitrator are supported by the evidence and the parties intent. Furthermore, the court can refuse to affirm any arbitrator's award which is illegal. *Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 462 A.2d 629 (1983). Any judicial intervention prior to this point would be premature, and would frustrate the intent of the arbitration process. "The parties to a collective bargaining agreement have bargained for the arbitrator's construction not the courts; thus the court has no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from his." *Scranton Federation of Teachers v. Scranton School District*, 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982).

In support of the above, we note the standard of review for arbitration awards under PERA is found at Section 7302(d)(2) of the UAA, 42 Pa.C.S. § 7302(d)(2), which provides as follows:

(d) Special Application . . .

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, not withstanding any other provision of this subchapter, modify or correct the award where the award is *contrary to law* and is such that had it been a verdict the jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

Based on the cases cited above, the first test imposed by Section 7304(b) of the UAA and its implementing cases is a determination of whether there is an agreement to arbitrate. Here, it is indisputable that the Agreement covered employees in the bargaining unit including the grievant, O'Brien, and contains an agreement to arbitrate all disputes. Thus, it cannot be claimed that there is no agreement to arbitrate as required for a stay of arbitration under the express language of Section 7304(b) of the UAA, 42 Pa.C.S. § 7304(b). Accordingly the court's stay of arbitration in the instant case must fail under this test.

It is obvious that Common Pleas failed to appreciate that the critical issue before it was not the factual or legal merits of O'Brien's grievance or the merits of the County's argument that the Agreement was not intended to control or influence the personnel issues relating to O'Brien's employment as a court employee. Rather, the only issue for Common Pleas when presented with the application to enjoin arbitration was *who decides the grievance.* (Emphasis added.) It is clear that Common Pleas usurped the function of the arbitrator by interpreting the Agreement to the effect that O'Brien had no rights under the Agreement that could be resolved by an arbitrator. Common Pleas' decision is obviously based on the County's argument that without exception, the right to hire, discharge and supervise court personnel is vested in the court judges. This argument is obviously flawed because, as we noted above, the ultimate decision has to be made by the arbitrator and he/she in turn must decide whether or not there was justification for the action taken by the County. If the arbitrator erred in making a legal determination or improper decision obviously under the UAA cited above, the arbitration award would be set aside or vacated by Common Pleas.

Although the collective bargaining agreement in *Beckert,* which the majority cites, contained a grievance procedure which did not result in arbitration, we recognized that:

> A court of common pleas could in the exercise of its constitutional power provide for a grievance or hearing procedure prior to discharge of a judicial employee. Such a procedure could be created by the court's own initiative or be the result of an agreement with a representative of the employees.

*Beckert,* 56 Pa.Commonwealth Ct. at 582, 425 A.2d at 863. Further:

> [J]udges, through collective bargaining, can *voluntarily* limit their absolute right to supervise their employees through appropriate procedures and there is no legal principle suggesting that the same cannot be said concerning their ability to hire and discharge employees. *Beckert.* If it is not voluntarily granted, of course, that would summarily end the matter. (Emphasis in original.)

*Teamsters Local,* 152 Pa.Commonwealth Ct. at 407, 619 A.2d at 389.

The Agreement here can be seen as nothing else but the voluntary agreement of Common Pleas as Employer, through their bargaining representative, the County, to accept binding arbitration. To deny that right after it had been bargained for in good faith would eviscerate the Agreement and make a sham of it. In other words, Employer cannot have it both ways. Employer had its agent bargain with the Union; Employer cannot now claim it has sole control over its employees, casting aside the bargained for provisions of the Agreement. In *Fraternal Order of Police v. Hickey,* 499 Pa. 194, 198, 452 A.2d 1005, 1007 (1982), the Supreme Court stated that:

> To permit a public employer to secure an advantage in the bargaining process by agreeing to a term and subsequently avoid compliance by belatedly asserting that term's illegality is equally inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster.

Thus, I would hold that if Common Pleas had jurisdiction, which I believe it did not, that it erred as a matter of law in holding that the Agreement's arbitration provisions do not apply to court-appointed employees, such as O'Brien.

We now address the question of whether Common Pleas had jurisdiction to enjoin arbitration. Even though jurisdiction was not raised by the parties,[3] the complaint in equity to enjoin the arbitration proceedings should have been filed with this Court in the first instance.

As the bargaining unit in this case was comprised of all regular full-time and regular part-time, court-appointed clerical/technical employees of the County of Butler, they are employees of the Commonwealth government because the Judicial Code defines "Commonwealth government" as "The

3. Subject matter jurisdiction may be raised *sua sponte* by this Court at any time. *Hughes v. Pennsylvania State Police,* 152 Pa.Commonwealth Ct. 409, 619 A.2d 390 (1992), *allocatur denied,* 536 Pa. 633, 637 A.2d 293 (1993).

government of the Commonwealth, *including the courts* and other officers or agencies of the unified judicial system...." (Emphasis added.)  42 Pa.C.S. § 102.  In *Teamsters Local,* we stated that:

> [T]he 'government of the Commonwealth' includes the courts of common pleas and it is therefore reasonable to conclude that, for purposes of jurisdiction, an employee of such a court is an employee of the Commonwealth government and hence 'an employee of the Commonwealth' under the exception in Section 933(a)(1)(vii) of the [Judicial] Code. *Teamsters Local,* 152 Pa.Commonwealth Ct. at 398–399, 619 A.2d at 384–385.

This holding in *Teamsters Local,* enabled us to retain jurisdiction.[4]  Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), specifically provides that:

> **General Rule**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>
> \*      \*      \*      \*      \*      \*
>
> (2) By the Commonwealth government, including any officer thereof [the County representing Employer here], acting in his official capacity, except eminent domain proceedings.

Thus, I would hold that Common Pleas erred in failing to quash the County's complaint in equity because jurisdiction lies with this Court's original jurisdiction.

Further, to receive the benefit of an injunction, a plaintiff, the County here, must demonstrate *prima facie* that its right to relief is clear, the need for relief is immediate, the injury is irreparable, and the remedy at law is inadequate.  *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975).  Because the County filed the complaint in equity and because O'Brien was a member of the Union, and thus covered by the Agreement, no *prima facie* evidence exists of the County's clear right to relief.  The record before Common Pleas does not support the conclusion that an injunction should issue enjoining arbitration.

**4.** The Supreme Court denied allocatur in *Teamsters Local* at 535 Pa. 671, 634 A.2d 1119 (1993).

Any judicial intervention before such *prima facie* showing is premature, and thus frustrating the intent of the arbitration process. "The parties to a collective bargaining agreement have bargained for the arbitrator's construction, not the court's; thus a court has no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from his." *Scranton Federation of Teachers, Local 1147 v. Scranton School District*, 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982). The threshold question, which must first go to the arbitrator, is whether agreement to arbitrate the disputed issue existed in the first instance. *In re Glover*, 137 Pa.Commonwealth Ct. 429, 587 A.2d 25 (1991).

Therefore, for the foregoing reasons, if Common Pleas had jurisdiction and the appeal to this Court was proper, which I believe it is not, I would reverse Common Pleas and order the arbitration process to continue to allow the arbitrator to determine whether an arbitrable issue exists. However, because I believe Common Pleas never had jurisdiction, I would vacate Common Pleas' order and remand this matter for arbitration to proceed.