IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Teamsters Local 776,          :
          Petitioner      :
                                :
      v.                    :     No. 1532 C.D. 2024
                                :
Pennsylvania Labor Relations    :     Argued: December 8, 2025
Board,                       :
          Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE STACY WALLACE, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: January 8, 2026

Teamsters Local 776 (Union) petitions for review of the October 15, 2024 final order of the Pennsylvania Labor Relations Board (PLRB) affirming the decision of the hearing examiner that the PLRB did not have jurisdiction over what it deemed to be a judicial employer's decision to terminate the employment of a court-appointed employee rather than an unfair labor practices case. Upon review, we affirm.

## I.    Factual and Procedural History

Aurora Bayles (Bayles) worked for the Adams County Court of Common Pleas (CCP)[1] as a probation officer. She and other court-supervised employees were

---

[1] CCP filed a notice of intervention on December 12, 2024, and filed a brief.

members of the Court-Appointed Professional Unit (bargaining unit) represented by Union.[2] She was also the bargaining unit's Chief Steward.

Union and the County have had collective bargaining agreements (CBA) since 2000. The CBA between the parties was most recently renewed in 2020 and expired on December 31, 2023. The County and Union negotiated over the terms of the new contract throughout 2023.

In December 2023, the County voted to approve a 4% general wage increase for its non-Union employees. Union employees were given wage increases, ranging from zero to 2.5% pursuant to their negotiated CBAs.

On or about August 21, 2023, some employees within the bargaining unit filed a Decertification Petition, seeking to remove Union as their bargaining representative. The County stayed further negotiations of the CBA pending the determination of the Decertification Petition.[3]

On January 19, 2024, the CCP terminated Bayles' employment for violating workplace policies.[4] On February 5, 2024, Union filed an unfair labor practice charge against the County and the CCP, alleging that the CCP's termination

---

[2] The bargaining unit consists of all full-time and regular part-time support staff employees who are directly involved with and necessary to the functioning of the courts and who are hired, fired, and directed by the courts, including but not limited to employees in Court Administration, Domestic Relations, District Magistrate's Offices, Department of Probation Services, and Court Reporters.

[3] Union also filed a charge of unfair labor practices regarding the County's alleged refusal to negotiate and/or arbitrate a new contract pending the Decertification Petition results. The PLRB declined to issue complaints on the charge, finding that the County had no obligation to bargain or proceed to interest arbitration pending the Decertification Petition proceedings. Union filed two other unfair labor practice charges against the County, all of which were dismissed or declined by the PLRB. Those decisions are not before us.

[4] Evidently, Bayles distributed stress balls and stickers to other probation officers with an acronym FAFO, meaning "F--- around and find out."

of Bayles during the pending Decertification Petition and because of her protected activities in assisting Union during that campaign, violated Section 1201(a)(1) and (3) of the Public Employe Relations Act (PERA),[5] 43 P.S. § 1101.1201(a)(1) and (3). On March 15, 2024, the PLRB issued a complaint against both the County and the CCP and set a hearing date.

On April 9, 2024, the CCP filed a Motion to Dismiss, arguing that the PLRB lacked jurisdiction over its decision to terminate Bayles based on the separation of powers doctrine as the discipline involved a judicial employee.[6]

On June 6, 2024, the hearing examiner issued a recommended order dismissing the unfair labor practice charge against the CCP. The hearing examiner, relying on *Cook v. Pennsylvania Labor Relations Board*, 315 A.3d 885 (Pa. Cmwlth. 2024), concluded that the PLRB does not have jurisdiction over the CCP, under the separation of powers doctrine, to review its employment disciplinary action against Bayles, a judicial employee. The hearing examiner rejected Union's position that this matter concerns the rights of judicial employees to organize and collectively bargain and that *Teamsters Local 115 v. Pennsylvania Labor Relations Board*, 619 A.2d 382 (Pa. Cmwlth. 1992) (*en banc*) (holding that judicial employers may not interfere with employees' attempts to form a union for purposes of collectively bargaining with the county on issues related to their pay and benefits), was controlling on the issue of the PLRB's jurisdiction.

Union filed Exceptions to the hearing examiner's decision granting the motion to dismiss the complaint. On October 15, 2024, the PLRB issued its final order

---

[5] Act of July 23, 1970, P.L. 563, No. 195, *as amended*.

[6] The County also filed a Motion to Dismiss on May 10, 2024, which was denied by the hearing examiner on June 18, 2024.

denying Union's Exceptions and granting the motion to dismiss the complaint filed by the CCP.

## II. Issues

On appeal,[7] Union acknowledges that the CCP's inherent right to discharge its employees is well-settled and protected under the separation of powers doctrine under article V, section I of the Pennsylvania Constitution. Relying primarily on *Teamsters Local 115*, Union argues, however, that it is **not** a violation of the separation of powers doctrine for the PLRB to hear an unfair labor practice charge alleging that a court has impeded its employees' ability to organize and collectively bargain. Union argues that, here, the PLRB has exclusive jurisdiction over Union's claim against the CCP because the unfair practice alleged (*i.e.*, the termination of Bayles during the pendency of the Decertification Petition) encroaches on the rights of the CCP's employees to organize and bargain collectively.[8] Specifically, Union

---

[7] Our standard of review of the final order of the PLRB is limited to determining whether the adjudication is in violation of the constitutional rights of the appellant, is not in accordance with law, is in violation of the practice and procedure of the Commonwealth agency, or whether any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. *Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board*, 985 A.2d 697 (Pa. 2009).

[8] The PLRB is vested with exclusive original jurisdiction by Section 1301 of the PERA, which provides:

> The [PLRB] is empowered . . . to prevent any person from engaging in any unfair practice listed in Article XII [(Section 1201)] of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.

43 P.S. § 1101.1301. Section 1201(a) of the PERA makes it an unfair labor practice to, *inter alia*, "(1) Interfer[e], restrain[] or coerc[e] employes in the exercise of the rights guaranteed in Article IV [(Section 401)] [Employee Rights ] of this act. 43 P.S. § 1101.1201(a). Section 401 of the PERA, in turn, provides: "It shall be lawful for public employes **to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining** . . . ." 43 P.S. § 1101.401 (emphasis added).

4

contends that its unfair labor practice charge plainly raised an issue surrounding the rights of the employees of the CCP "to organize and collectively bargain" under Section 401, and that the CCP interfered with these rights, in violation of Section 1201(a)(1) of the PERA, by terminating Bayles during the pendency of the Decertification Petition. In support of its position that Bayles' termination constituted "interference, restraint or coercion" with the rights of its employees to "organize and collectively bargain," Union explains:

> [T]he CCP terminated a Union Steward amid contract negotiations and an attempt to decertify [Union, as the unit's bargaining representative] . . . . At the time of her termination, Bayles was involved in both the negotiations of the new CBA, and the organization of bargaining unit employees to thwart the [D]ecertification [P]etition. It is clear and obvious that a union without a steward is in a facially worse position than one with a steward, especially at a time in which their responsibilities are at an all-time high.

(Union's Br. at 14.) Union further contends that the termination of Bayles "directly affected the rest of the bargaining units' same rights in a completely foreseeable manner" and that her termination was "felt across the entire bargaining unit." *Id.* at 15-16. It maintains that Bayles' termination was "pretextual" and that she was "the victim of her station as a Union Steward." *Id.* at 15.

It is Union's position that there is no violation of the separation of powers doctrine because here, as in *Teamsters Local 115*, the CCP has infringed upon its employees' attempts to organize and collectively bargain. It maintains that *Cook* does not control because the issue at the heart of this matter is the CCP's employees' right to organize, not the judiciary's right to hire, fire, or supervise their employees.

### III.    Analysis

A court's inherent right to hire, fire, and supervise court employees without interference from other government branches is well established. *County of*

*Butler v. O'Brien*, 650 A.2d 1146, 1148 (Pa. Cmwlth. 1994). A court's right to hire, fire, and supervise its employees has a solid foundation in the doctrine of separation of powers set forth in article V, section 1 of the Pennsylvania Constitution. *Beckert v. American Federation of State, County and Municipal Employees, District Council 88*, 425 A.2d 859, 862 (Pa. Cmwlth. 1981), *aff'd per curiam*, 459 A.2d 756 (Pa. 1983); *see also Jefferson*, 985 A.2d at 707 (recognizing that Pa. Const. art. V, § 1 "vests with the judiciary the power to administer justice," and the judiciary's authority over court employees is "essential to the maintenance of an independent judiciary").

Pursuant to the Pennsylvania Constitution, the three branches of the Commonwealth government (the General Assembly, the Executive, and the Judiciary) are each separate, equal, and independent of the other. *L.J.S. v. State Ethics Commission*, 744 A.2d 798, 800 (Pa. Cmwlth. 2000). Article V of the Pennsylvania Constitution guarantees the independence of the Judiciary. *See Com. ex rel. Gallas v. Pennsylvania Labor Relations Board*, 636 A.2d 253, 261 (Pa. Cmwlth. 1993), *aff'd*, 665 A.2d 1185 (Pa. 1995). Thus, neither the Executive Branch nor the General Assembly, acting through an administrative agency, may constitutionally infringe upon the powers or duties of the Judiciary. *L.J.S.*, 744 A.2d at 800. As our Pennsylvania Supreme Court has stated, "[u]nder the separation of powers doctrine, the legislature may not exercise any power specifically entrusted to the judiciary." *Court of Common Pleas of Erie County (6th Jud. Dist.), Juvenile Probation Department v. Pennsylvania Human Relations Commission*, 682 A.2d 1246, 1247 (Pa. 1996). The separation of powers principle extends to employment matters within the Judiciary itself. The law is clear:

> The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. The power to select judicial assistants is an inherent corollary

6

of the judicial power itself and the power to supervise or discharge such personnel flows essentially from the same source. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon or diminished by another branch of government.

*L.J.S.*, 744 A.2d at 800-01 (citations omitted). This rationale extends to all levels of court personnel. *Erie*, 682 A.2d at 1248; *see also Ellenbogen v. Allegheny County*, 388 A.2d 730, 735 (Pa. 1978) (addressing the authority of Pennsylvania judges over court employees, including those in the probation offices). At the same time, employees of the judiciary may organize and collectively bargain with their county commissioners for matters related to their pay. *Beckert*, (holding that the PLRB's review of a judicial clerk's dismissal pursuant to the CBA encroached upon the judiciary's power to hire and fire court employees).

### A. *Teamsters Local 115*

*Teamsters Local 115*, upon which Union relies here, involved a very unusual situation, somewhat of an anomaly, the likes of which we have not seen since. There, Teamsters Local 115 began an organizational drive among the employees of the Court of Common Pleas of Philadelphia County (common pleas court), which garnered positive responses from various employee groups, including court criers, court officers, and judicial aides. After the organizational drive started, however, the common pleas court was advised that these positions would not appear in the following year's budget and would, instead, be replaced by the position of tipstaff. The result of this change was the elimination of employees occupying these former positions, although some were rehired as tipstaff. In addition, within a week of the organizing drive, 100 custodial positions were eliminated based on the judicial employer's decision to privatize. Because of the judicial employer's actions, the labor union filed an unfair labor practice charge with the PLRB, alleging that the reclassification of the judicial

7

employees and privatization of the custodial positions was motivated by anti-union animus and to prevent unionization in violation of Section 1201(a)(1) and (3) of the PERA.

The PLRB, however, relying on *Beckert*, refused to issue a complaint in response to the charge because it concluded that the constitutional doctrine of separation of powers prevented it from exercising jurisdiction over the charges where the judicial branch of government was the respondent. *Teamsters Local 115*, 619 A.2d at 400-01. Teamsters Local 115 filed exceptions to the PLRB's decision, which the PLRB denied, and an appeal to this Court followed.

On appeal, Teamsters Local 115 argued that *Beckert*[9] was distinguishable because at issue in the case before us at that time was the judicial employees' rights to organize and the vindication of those rights is left, in the first instance, to the PLRB.

---

[9] In *Beckert*, a court of common pleas entered into a CBA which provided that no employee could be demoted, suspended, discharged, or disciplined without just cause. Subsequently, a clerk employed by a district justice, who had been discharged from her employment, appealed her discharge through the grievance process. The clerk was reinstated at one level of the grievance procedure when an agreement was reached between the court administrator and the union, but the discharge was upheld when the district justice appealed the matter to the president judge. The CBA had provided for an appeal to the president judge only when the grievance had not yet been resolved. The union subsequently filed unfair labor practice charges with the PLRB against the court, claiming that the court did not follow the termination procedures outlined in the parties' CBA. The court, in turn, filed an equity action in this Court's original jurisdiction seeking to enjoin the PLRB from exercising jurisdiction over the unfair labor practice charge on the theory that the discharge of a court employee was a matter within the exclusive province of the judiciary. This Court agreed, concluding that the PLRB's review of the clerk's dismissal pursuant to the CBA encroached upon the judiciary's power to hire and fire court employees. *Beckert*, 425 A.2d at 863-64. We explained that "PERA grants to judicial employees the right to organize and to bargain collectively with county commissioners, or other management representatives of the courts, concerning the financial terms of employment," but also acknowledged that "PERA cannot constitutionally be interpreted as immunizing such employees from the inherent judicial power of discharge." *Id.* at 863. Thus, we enjoined the PLRB from exercising jurisdiction over the clerk's discharge, noting that "the discharge of a judicial employee is a judicial power vested by our Constitution in the courts. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government." *Id.* at 862.

We agreed with Teamsters Local 115 that *Beckert* was not controlling because in *Beckert*, the rights of judicial employees to organize under the PERA was not at issue. There, the court "had already entered into a voluntary [CBA] with the [union]" and the CBA itself provided that the final appeal and final decision would rest with the President Judge." *Id.* at 403. We explained that "*Beckert* stands for the proposition that the ultimate resolution of a dispute over a collective bargaining agreement **which already exists** cannot rest with the executive or legislative branches of government where the issue concerns the authority to select, discharge, or supervise court personnel." *Id.* (emphasis added). In explaining further why the matter before us was unlike *Beckert*, we stated that

> in the instant case,. . . we are faced with a situation where, allegedly, **the judiciary refuses to even allow its employees to organize for the purpose of bargaining and consequently, there is no [CBA] in dispute**. *Beckert* is thus clearly distinguishable insofar as it delineates the jurisdiction of the [PLRB] over unfair labor practice charges levelled against the judiciary.

*Id.* (emphasis added).

Given the particular facts in that case, we emphasized "that the judiciary cannot fire its employees at its pleasure **where its motivation is to prevent organization and bargaining under [the PERA]**." *Id.* at 408 (emphasis added). Concluding that *Beckert* was not controlling because the right of judicial employees to organize under the PERA was at issue, we carved out an exceptionally narrow exception to the separation of powers rule where it is alleged that the judiciary is impeding its employees' ability to organize and collectively bargain. We held that it is not a violation of the separation of powers principles for the PLRB to hear a charge filed by judicial employees who claimed all positions in a proposed bargaining unit that **had yet to be established** were eliminated in an effort to quash their efforts to

9

form a union and bargain with their judicial employer. Because the PLRB had the exclusive jurisdiction to hear the unfair labor practice charge[10] alleging that the judicial employees were fired as a result of the exercise of their right to organize under the PERA, we reversed the PLRB's decision to decline the acceptance of jurisdiction and remanded the case to the PLRB to conduct hearings on the unfair labor practice charges.

Our holding in *Teamsters Local 115* was incredibly narrow and applied only to those cases in which employees were fired for allegedly exercising their right to organize in the first instance, which is a violation of the PERA. We made it clear that in that situation, the PLRB **would** have jurisdiction to hear the unfair labor practice charge. That is, there would be no violation of the separation of powers doctrine. However, where the dispute involves the rights of the judicial employer to discharge an employee under a CBA **that already exists**, the separation of powers principles would be violated if the executive or legislative branches attempted to interfere with judicial supervision of its employees. *Id.*

### B. *Cook*

Recently, in *Cook*, this Court reaffirmed the need for strict adherence to the separation of powers principles in cases under the PERA. There, the York County Court of Common Pleas (court) entered into a CBA with the Service Employees International Union, Local 668, Pennsylvania Social Services Union (SEIU), which is the bargaining agent for court-appointed employees, including those in the Probation and Parole and Domestic Relations units. A probation officer (a judicially appointed

---

[10] Again, any interference with or restraint of the employees' right to organize and bargain collectively constitutes an unfair labor practice, 43 P.S. § 1101.1201(a)(1), and, by virtue of Section 1301 of the PERA, 43 P.S. § 1101.1301, exclusive original jurisdiction to hear unfair labor practice charges lies with the PLRB.

10

employee) received a written reprimand for violating the court's search and seizure policy. The probation officer, through his labor union, filed a grievance pursuant to the CBA. Thereafter, the probation officer's discipline was enhanced from a written reprimand to a two-day suspension. As a result of this punishment enhancement, the probation officer, with the assistance of SEIU, filed an unfair labor practice charge with the PLRB alleging that the court retaliated against him for utilizing the grievance process.

The PLRB issued a complaint, and the court filed a motion to dismiss arguing that, under *Beckert*, the PLRB did not have jurisdiction to review the probation officer's discipline based on the separation of powers doctrine. The PLRB denied the motion to dismiss but determined that no unfair labor practice occurred. The court appealed the final order of the PLRB and also filed a declaratory judgment action in this Court's original jurisdiction raising a number of arguments, including that the PLRB was without jurisdiction to reach the merits of the unfair labor practice charge, *i.e.*, that the court did not commit an unfair labor practice. SEIU and the PLRB filed an application for summary relief arguing that the imposed discipline interfered with, coerced, or restrained organizing and collective bargaining activity in such a way that *Teamsters Local 115* controlled. *Cook*, 315 A.3d at 896. In dismissing the application, we distinguished *Teamsters Local 115*, noting that the unfair labor practice charge in that case involved the judiciary's refusal to allow its employees to organize for purposes of bargaining, and that the circumstances before us in *Cook* did not involve the organizing of employees. Rather, it involved the discipline of a judicial employee. Subsequently, in a memorandum *en banc* opinion, we granted the court's application for a declaratory judgment and concluded that "the [PLRB] lacked jurisdiction to issue the complaint" and vacated the PLRB's final order. In so doing, we emphatically ruled

11

that the PLRB cannot assert jurisdiction over a court to review the court's supervision and discipline of court-appointed employees, as a matter of law, under the separation of powers doctrine. *Cook v. Pennsylvania Labor Relations Board* (Pa. Cmwlth., No. 161 M.D. 2021, filed April 5, 2024) (*en banc*).

### C. *Whether Teamsters Local 115 Controls*

Here, Union contends that this is a case involving employees' right to organize and collectively bargain and not an issue policing the judiciary's right to hire, fire, and supervise. Therefore, Union contends, the factual scenario in this case is similar to that of the judicial branch's employees in *Teamsters Local 115*, not *Cook*. We disagree.

The narrow holding of *Teamsters Local 115* is clearly inapplicable here. In this case, as in *Beckert* and *Cook*, a single employee, *i.e.*, Bayles, was terminated. Union, in its charge, alleged that Bayles was treated disparately than other employees who committed more serious offenses because of her Union activities. Therefore, it is clear that Union was seeking to have Bayles' discipline reviewed by the PLRB, a non-judicial branch of government. Under the separation of powers doctrine this is forbidden.

Union alleges the CCP committed an unfair labor practice by terminating Bayles during the pendency of the Decertification Petition and during the time when Bayles was involved in both the negotiations of the new CBA and efforts to thwart the Decertification Petition. Union asserts in limited and conclusory fashion, with no elaboration, that "a union without a steward is in a facially worse position than one with a steward," that the termination of Bayles "directly affected the rest of the bargaining units' same rights in a completely foreseeable manner" and that her termination was "felt across the entire bargaining unit." (Union's Br. at 15-16.)

12

Despite Union's attempt to color the matter as an unfair labor practice, there is no allegation that by terminating Bayles the CCP interfered with, restrained, or coerced its employees from "organiz[ing], form[ing], join[ing] or assist[ing] in employe organizations or [] engag[ing] in lawful concerted activities for the purpose of collective bargaining . . . ." 43 P.S. §§ 1101.401; 1101.1201(a). The CCP's employees still have access to PERA's processes, unlike the court employees in *Teamsters Local 115*, who were prevented altogether from reaping the benefits of collective bargaining because **they were fired for attempting to organize under the PERA**. In *Teamsters Local 115*, this Court made abundantly clear that its ruling applied only to alleged interference with employees' initial efforts to organize because courts, as public employers, are obligated to bargain under the PERA. This narrow exception does not extend to judicial supervision of employees **after** a union is certified and after a CBA is in place. In cases where a CBA exists, the employees have already organized and engaged in collective bargaining. In that situation, as here and in *Cook* and *Beckert*, the PLRB simply cannot, under the separation of powers doctrine, interfere with the judiciary's inherent right to hire, fire and supervise its employees entirely.

In this matter, it is clear there was no attempt by the CCP to prevent employees from organizing for purposes of bargaining with the County. A union was already in place, as it had been for over 20 years, and there is no allegation that the CCP, by firing Bayles, somehow prevented Union from meeting and bargaining with the County on behalf of the CCP's employees. In fact, the crux of this case is not interference attempts by the judiciary's employees to organize but rather the opposite. The unfair labor practice charge here relates to the CCP's employees' attempts to **decertify** their existing bargaining unit. Because both Union and a CBA were already

established, *Teamsters Local 115's* narrow exception is inapplicable. Rather, this case is governed by the overwhelming body of case law holding that the PLRB has jurisdiction only if the unfair labor practice charge involves a court employee actually organizing co-workers or bargaining with a county, and where the charge is based on some other time period, it must be dismissed by the PLRB for want of jurisdiction. *Teamsters Local 115* is, therefore, distinguishable because unlike the situation in *Teamsters Local 115*, the judiciary is not refusing to allow its employees to organize for the purpose of bargaining. Rather, like in *Beckert* and *Cook*, the discipline of a judicial employee is at issue.

Accordingly, based on the foregoing, we affirm the order of the PLRB, which dismissed Union's unfair labor practices charge against the CCP for lack of jurisdiction.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Teamsters Local 776,             :
          Petitioner      :
                       :
                       :
         v.             :   No. 1532 C.D. 2024
                       :
Pennsylvania Labor Relations     :
Board,                           :
          Respondent      :

## *__ORDER__*

AND NOW, this 8th day of January, 2026, the final order of the Pennsylvania Labor Relations Board dated October 15, 2024, is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge